No. 132.—M. P. G. ALLEN, Executrix, v. M. S. CUTLIFF AND HUSBAND.

The purchaser of real property at a succession sale, during the late war, is protected in his title and ownership thereto by the provisions of article 149 of the constitution of 1868, if it appear that all the proceedings in regard to the sale of the property were upon their face regular.

APPEAL from the Tenth Judicial District Court, parish of Caddo. *Levisee*, J. *Robert J. Looney*. for plaintiff and appellant. *S. L. Taylor*, for defendants and appellees.

TALIAFERRO, J. The plaintiff, as executrix of her husband, James S. Allen, deceased, sues the defendants to recover two town lots, with the valuable buildings and improvements upon them, constituting what was formerly known as the "Commercial Hotel," but now called the "Brooks House," situated in Shreveport, on lots eleven and twelve, in block No. forty-nine, on Milam street. ..

The petitioner sets out that on the ninth of December, 1863, her son, Henry E. Allen, without her authority or consent, made an application for and obtained an order of court for the sale of the property mentioned in her petition, and that on the sixth of February, 1864, under this order, the property was sold for cash and purchased by Mildred S. Cutliff, one of the defendants, at the price of $17,600, which has never been paid, nor any part thereof, to any person legally authorized to receive it; and she avers that if any pretended payment has been made of the price specified it was made in Confederate States treasury notes, and to H. E. Allen, who had no authority to receive it. She specially denies ever having given him a power of attorney to act in these matters. She repudiates all his acts pretended to be done under her authorization. She avers that the calling of the family meeting to authorize the sale of the minor's interest in the property, and all their acts in relation thereto, and especially their recommendation to invest the minor's share of the proceeds of sale in Confederate bonds, are utterly null and void. That the court was without right to homologate the proceedings. She avers defendants have had the use and enjoyment of the property since the first of May, 1865, and that the revenues of it are worth $525 per month. She prays citation and judgment annulling the aforesaid proceedings of the family meeting and the order of court homologating the same, and the decree of the court ordering the sale. She prays in the alternative that the property sued for be decreed to belong to the succession of James S. Allen, deceased, and that petitioner be put in possession of it, and that she recover from the defendants $21,525 rents and revenues thereof; or, that she have judgment against the defendants for the sum of $17,600, the unpaid price of said property, with five per cent. interest per annum from sixth February, 1864, with the vendor's lien on the said property

·as security for the payment of the price and for costs and general relief.

The answer admits possession of the property since the sixth of Feb-ruary, 1864, under a title good and sufficient in law. The defendants then detail the facts and circumstances under which the purchase was made, and which are substantially the same as those set forth in the petition, with this difference, that the defendants aver that all the proceedings were regular and legal. They allege that those proceedings were commenced and completed with the plaintiff's approbation and consent, or that at any rate she subsequently ratified and approved them, and can not now impeach their validity. They allege that they have made improvements and repairs on the premises worth $10,000. For these repairs and improvements in case of eviction they claim $10,000 with interest, and also if evicted the plaintiff and Henry E. Allen are bound in warranty to refund the purchase price. They pray the plaintiff's demand be rejected; that they be quieted in their title and possession; that in the event judgment be rendered against them they recover $17,600 with interest, and the further sum of $10,000 with interest and costs.

Judgment was rendered in the court below in favor of the defendant, Mildred S. Cutliff, recognizing her title and quieting her in possession of the property.

The plaintiff prosecutes this appeal.

It appears that early in the summer of the year 1857 James S. Allen died in the parish of Caddo, leaving an estate appraised at about $30,000, and leaving a will by which his widow, the present plaintiff, was appointed executrix. · She qualified in that capacity, and also as tutrix of her two minor children, the heirs of the decedent. It is in evidence that about May, 1858, the widow removed to the State of Virginia, and it is not shown that she has ever been in Louisiana since. Shortly before leaving she appointed L. M. Nutt, an attorney at law of Shreveport, her agent and attorney in fact, clothing him with ample powers, general and special, to represent her in her capacity of executrix. It appears from the record that on the twenty-seventh of March, 1860, her attorney filed a petition in her name setting forth the propriety of having the property which is the subject of this controversy sold, and prayed an order for the convocation of a family meeting to take the matter under consideration, and advise accordingly. A meeting assembled, advised the sale and prescribed the terms. The proceedings were homologated by order of court and a decree rendered on the eighteenth of April, 1860, for sale of the property in conformity with the terms fixed. Nothing further was ever done in the matter. On the ninth of December, 1863, a petition of the same purport was filed in the District Court of the parish of Caddo by Henry E. Allen,

one of the heirs of James S. Allen, now become of age, and who professed to act in the name of his mother in her capacity of executrix, and signed his name as attorney in fact. A family meeting was called, and it advised the sale as a matter of advantage to the remaining minor, and directed that after payment of debts the portion of the proceeds coming to the minor should be vested in other real estate or in Confederate States bonds. The proceedings were duly homologated, the sale ordered, and the property sold for cash under benefit of appraisement on the sixth of February, 1864. The appraisement was made on the twenty-third of December, 1863. The valuation was $10,000. The property was sold for $17,600, and paid in Confederate money. No power of attorney from the executrix to Henry Allen was ever seen. He himself, on the stand as a witness, stated that in the absence of Mr. Nutt, the agent and attorney in fact of his mother, he had assumed the responsibility and carried through the business without the consent or knowledge of his mother, the executrix. Nutt, the attorney in fact, testified that the power of attorney given to him by the executrix had never been revoked. That before the war he had permitted Henry E. Allen, the person who had provoked the sale in question, to collect rents, pay bills and hire the negroes. This witness, it seems, was absent when the sale was made, and knew nothing of it until after it had taken place. In this case the proceedings in regard to the sale of the succession property were upon their face regular. The purchaser appears to have acted in good faith. The estate was much in debt. Heavy liabilities were at the time of the sale still hanging over it, and on account of which, as we have seen, the executrix and tutrix in 1860 had convoked a family meeting to advise in relation to a sale of property to provide means of payment. It is shown that Henry E. Allen, the pretended attorney in fact and one of the heirs, paid a large amount of this indebtedness. An order of court was rendered for the sale of the property; the sale was duly advertised and made in conformity with the order. This should protect the purchaser in good faith. The purchaser paid the price in such currency as was then prevalent when the sale was made, and she went into possession of the property. Under this state of facts we think this purchase at a judicial sale, clothed with all the legal formalities, made in good faith, accompanied by the payment of the price of adjudication, and delivery and possession of the property, constituted an executed contract intended to be made valid by article 149 of the constitution. Lee v. Taylor, 21 An., p. 514.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed with costs.

Rehearing refused.